## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

XAVIER M. JOHNSON                                        CIVIL ACTION

VERSUS

JACOB DETTMERING,                               NO. 19-00744-BAJ-SDJ
ET AL.

### RULING AND ORDER

Before the Court is Defendant Jacob Dettmering's **Rule 12(b)(1), (6) Motion To Dismiss (Doc. 20)**. The Motion is opposed. (Doc. 21). Defendant filed a Reply Memorandum. (Doc. 22). Following a hearing on the Motion, the parties filed supplemental briefs. (Doc. 30; Doc. 31). For the reasons stated herein, Defendant's Motion is **GRANTED**.

## I.    BACKGROUND

This case arises out of Plaintiff's unlawful detention in the West Feliciana Parish (hereinafter "Parish") Detention Center based on Federal Bureau of Investigation Special Agent Dettmering's (hereinafter "Defendant") verbal request that he be detained. (Doc. 19, ¶¶ 1, 55). Plaintiff alleges that he was arrested on state charges and placed into the custody of the Parish Sheriff on October 28, 2018. (*Id.* at ¶ 1). Plaintiff allegedly posted bond on his state charges in December 2018. (*Id.*). On November 5, 2018, however, Defendant contacted the Sheriff's Office and requested that Plaintiff not be released from custody because the

FBI planned to seek a federal arrest warrant for Plaintiff on charges pertaining to an unrelated matter. (*Id.*).

Despite posting bond in December 2018, Plaintiff alleges that he was unlawfully kept in custody based solely on Defendant's phone call to the Sheriff's Office. (*Id.*). Plaintiff filed a Motion for Habeas Corpus on January 17, 2019, which the Court granted. (*Id.*). Plaintiff asserts that he was unlawfully detained from December 18, 2018 until January 17, 2019. (*Id.* at ¶ 68).

Plaintiff now brings claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, along with claims based on "Due Process," "Equal Protection," "denial of access to courts," and "failure to intervene." (*Id.* at ¶¶ 20–53; 58–65). Plaintiff also alleges a violation of 42 U.S.C. § 1985(3) based on a conspiracy among Defendants Dettmering, Darrel Roan, warden of the Parish Detention Center, and Archer Lee, a deputy of the Parish Sheriff's Office, while acting to deprive him of his constitutional rights. (*Id.* at ¶¶ 54–57). Additionally, Plaintiff asserts claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his "constitutional rights as protected by the Fourth, Fifth, and Sixth Amendments." (*Id.* at ¶¶ 66–70). Finally, Plaintiff alleges Louisiana state law claims for false imprisonment, intentional infliction of emotional distress, and respondeat superior. (*Id.* at ¶¶ 71–81).

Plaintiff alleges that "[a]t all times relevant hereto, S.A. Jacob Dettmering was acting under the color of law and in his capacity as a Special Agent within the F.B.I." (*Id.* at ¶ 6).

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and their authority to adjudicate claims must be conferred by statute or the Constitution. *Hall v. La.*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–287 (5th Cir. 2012); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Further, "[t]he party invoking federal jurisdiction bears the burden of pleading and proving the court's subject matter jurisdiction." *Wagster v. Gautreaux*, No. CIV.A. 12-00011-SDD, 2014 WL 465771, at *1 (M.D. La. Feb. 4, 2014) (citing *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)) (additional citations omitted). Dismissal of a party's claims is appropriate under Federal Rule of Civil Procedure 12(b)(1) if a party fails to carry this burden. *Wagster*, 2014 WL 465771, at *1 (citing *Ramming*, 281 F.3d at 161).

"When a Rule 12(b)(1) motion to dismiss is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Wagster*, 2014 WL 465771, at *1 (citing *Ramming*, 281 F.3d at 161). "A motion to dismiss under

Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Wagster*, 2014 WL 465771, at *1 (citing *Hall*, 974 F. Supp. 2d at 985).

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." *Hall*, 974 F. Supp. 2d at 985 (citing Fed. R. Civ. P. 12(b)(6)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Wagster*, 2014 WL 465771, at *1 (citing *Hall*, 974 F. Supp. 2d at 986). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Hall*, 974 F. Supp. 2d at 985–86.

When ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Wagster*, 2014 WL 465771, at *1 (citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Wagster*, 2014 WL 465771, at *1 (citing *Ramming*, 281 F.3d at 161).

## III.  DISCUSSION

Defendant moves to dismiss all claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 20). Defendant seeks Rule 12(b)(6) dismissal of Plaintiff's claims "A" through "I" pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and *Bivens*. (Doc. 20-1, p. 1); *see Bivens v.*

*Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). Defendant seeks Rule 12(b)(1) dismissal of Plaintiff's claims "J" through "L," state law tort claims, based on sovereign immunity. (Doc. 20-1, p. 2).

While the Court would customarily consider the Rule 12(b)(1) jurisdictional attack first, here, the Court will review the Rule 12(b)(6) Motion first because the outcome of Plaintiff's state law tort claims depends in part on the Court's ruling regarding Plaintiff's *Bivens* claims. (*See* Doc. 21, p. 9 "Counts J-L [state law tort claims] should not be dismissed as to [Defendant] as those counts are also relevant to [Plaintiff's] claim under *Bivens*.").

## A. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss

Defendant seeks dismissal of Counts A through I under Federal Rule of Civil Procedure 12(b)(6). (Doc. 20-1, p. 1).

### i. 42 U.S.C. § 1983 Claims—Counts A through E and G through H

First, Defendant moves to dismiss Counts A through E and G through H, which include claims under 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, along with claims based on "Due Process," "Equal Protection," "denial of access to courts," and "failure to intervene." (Doc. 19, ¶¶ 20–53; 58–65; Doc. 20-1, p. 1–3).

Defendant argues that as a federal actor, a Special Agent of the FBI, he is not subject to suit under Section 1983. (Doc. 20-1, p. 5; *see also* Doc. 19, ¶ 6 (Plaintiff alleges that "[a]t all times relevant hereto, S.A. Jacob Dettmering was acting under the color of law and in his capacity as a Special Agent within the F.B.I.")). Because

Section 1983 only provides redress for actions taken under color of state law, Defendant argues that the statute cannot provide a basis for liability against him. (Doc. 20-1, p. 5).

Plaintiff responds that the notion that "there is no applicable redress for such violations anytime the offender is a federal employee" is both "illogical and incorrect." (Doc. 21, p. 3). Plaintiff asserts that "[r]ights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." (*Id.* at p. 3 (citing *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).

The U.S. Supreme Court declared, "[i]n 42 U.S.C. § 1983, Congress provided a specific damages remedy for plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017).

The United States Court of Appeals for the Fifth Circuit has held that Section 1983 "only provides redress for actions taken under color of state law," but does not apply to "actions [] taken pursuant to federal law by federal agents . . ." *Zernial v. U.S.*, 714 F.2d 431, 435 (5th Cir. 1983) (citing *Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982) (actions of federal officials taken under color of federal law cannot form a basis of suit under section 1983) (additional citations omitted)). The court reasoned that Section 1983 "only provides redress for actions taken under color of *state* law." *Id.*

This Court has held that Section 1983, "by its terms, only provides a cause of action to anyone deprived of a federally protected right 'under color of state law.' [] This statute, therefore, applies only to claims asserted against state officials and does not apply to actions taken by federal agencies or employees." *Fajardo-Guevara v. United States*, No. CV 14 0737-BAJ-EWD, 2016 WL 792392, at *1 (M.D. La. Jan. 29, 2016), *report and recommendation adopted*, No. CV 14 00737 BAJ EWD, 2016 WL 816793 (M.D. La. Feb. 29, 2016).

Here, in support of his *Bivens* claim, Plaintiff asserts that Defendant was a "federal actor by virtue of acting under color of federal law." (Doc. 21, p. 9). Accordingly, Plaintiff's claims against Defendant are impermissible under 42 U.S.C. § 1983. *See Abbasi*, 137 S. Ct. at 1848; *Zernial*, 714 F.2d at 435; *Fajardo-Guevara*, 2016 WL 792392, at *1.

Plaintiff's argument that Defendant can be held liable under Section 1983 based on a conspiracy or joint activity with state officials does not persuade otherwise. (Doc. 31, p. 2 (citing *Knights of Ku Klux Klan Realm v. East Baton Rouge Par. Sch. Board*, 735 F.2d 895, 900 (5th Cir. 1984)). To state a conspiracy claim under Section 1983, Plaintiff must allege facts showing Defendant's specific intent to violate a protected right and an agreement with state officials to commit such illegal actions. *See Angelle v. Town of Duson*, No. 6:18-CV-00272, 2018 WL 4649788, at *8 (W.D. La. Aug. 7, 2018), *report and recommendation adopted*, No. 6:18-CV-0272, 2018 WL 4624114 (W.D. La. Sept. 26, 2018); *see also Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019).

Courts have dismissed conspiracy claims under Section 1983 for failure to state a claim when the Complaint did not specifically allege facts supporting an "agree[ment] to commit an illegal act." *Blakely*, 360 F. Supp. 3d at 490 ("Because Husband 'fails to set forth specific allegations that [Detective and Deputy] agreed to commit an illegal act,' his conspiracy claims against them should be dismissed for failure to state a claim) (citing *Simmons v. Jackson*, No. 3:15-CV-1700-S-BT, 2018 WL 4574975, at *4 (N.D. Tex. Sept. 6, 2018), *report and recommendation adopted*, No. 3:15-CV-1700-S-BT, 2018 WL 4568802 (N.D. Tex. Sept. 24, 2018) (dismissing Section 1983 conspiracy claim for failure to state a claim)).

Here, the facts as alleged do not support an agreement between Defendant Dettmering and state officials "to commit an illegal act." *See Blakely*, 360 F. Supp. 3d at 490. Rather, at the time of Defendant's phone call to state officials, no matter how inadvisable, Plaintiff was lawfully in state custody. Plaintiff does not allege facts supporting an agreement among Defendants to detain Plaintiff even if his detention later became unlawful. Accordingly, Plaintiff's Section 1983 claims against Defendant, as asserted in Counts A through E and G through H, are dismissed. (Doc. 19).

### ii.    42 U.S.C. § 1985(3) Claims—Count F

Second, Defendant moves to dismiss Count F, Plaintiff's "conspiracy to deprive constitutional rights" claim pursuant to 42 U.S.C. § 1985(3). (Doc. 20-1, p. 6). Defendant argues that the Fifth Circuit has held that Section 1985(3), like Section 1983, is inapplicable to federal actors. (*Id.*) Defendant cites *Mack v. Alexander*

and *Cantú v. Moody* in support of his argument. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978); *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112, 207 L. Ed. 2d 1052 (2020).

In *Mack*, the Fifth Circuit held that Section 1985 provides a remedy for deprivation of rights under color of *state* law but does not apply when the defendants are acting under color of *federal* law. 575 F.2d at 489 (emphasis added). In *Cantú,* the Fifth Circuit declared, "[o]ur precedent holds § 1985(3) does not apply to federal officers." 933 F.3d at 419. The court explained the following:

> In *Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978) (per curiam), [the Fifth Circuit] concluded [that] § 1983 and § 1985 "provide a remedy for deprivation of rights under color of state law and do not apply when the defendants are acting under color of federal law." *Id.* at 489; accord *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971). Other circuits have criticized that holding for failing to grapple with Supreme Court precedent. *See, e.g., Iqbal v. Hasty*, 490 F.3d 143, 176 n.13 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Ogden v. United States*, 758 F.2d 1168, 1175 n.3 (7th Cir. 1985). And the Supreme Court recently assumed § 1985(3) applies to federal officers. *See Ziglar v. Abbasi*, ⸺ U.S. ⸺, 137 S. Ct. 1843, 1865–69, 198 L.Ed.2d 290 (2017). *Mack* may not have aged well, but we need not decide whether it remains binding on us.

*Id.*

Defendant asserts that although the Fifth Circuit has acknowledged that "*Mack* may not have aged well," it is a "strict *stare decisis* court," meaning that "one panel of th[e] court cannot disregard, much less overrule, the decision of a prior panel[.]" (Doc. 20-1, p. 6 (citing *Cantú*, 933 F.3d at 419; *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 832 (5th Cir. 2000)).

Plaintiff responds that *Cantú* may soon be overturned because the decision is on petition for writ of certiorari before the Supreme Court. (Doc. 21, p. 5). Since the filing of Plaintiff's Opposition, however, the Supreme Court has denied review of the Fifth Circuit's decision in *Cantú*. 141 S. Ct. 112, 207 L. Ed. 2d 1052 (2020).

Plaintiff also argues that "[s]*tare decisis* is no reason to cling to incorrect decisions of the past," and that the Fifth Circuit's holding in *Cantú* is "contrary to the plain language in § 1985 as well as Supreme Court precedent and therefore should not be followed." (*Id*. at p. 5–8). Plaintiff relies on *Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017), wherein "the Supreme Court recently assumed § 1985(3) applies to federal officers." *Cantú*, 933 F.3d at 419 (citing *Abbasi*, 137 S. Ct. at 1865–69).

*Cantú* was decided by the Fifth Circuit in 2019, two years after the Supreme Court's 2017 ruling in *Abbasi. Cantú*, 933 F.3d at 419*; Abbasi*, 137 S. Ct. at 1843. Accordingly, *Cantú* is still "good law" in this Circuit and controls this case. *See Whirley v. Am. Brands, Inc.*, No. CIV. A. C-97-009, 1997 WL 881215, at *3 (S.D. Tex. Apr. 7, 1997), *aff'd*, 139 F.3d 898 (5th Cir. 1998) ("The proposition that a decision of the Fifth Circuit Court of Appeals incorrectly interprets an opinion by the Supreme Court of the United States must be addressed to the Fifth Circuit, the decisions of which are binding on this Court."). Accordingly, the Court must dismiss Plaintiff's Section 1985(3) claim against Defendant because "[Fifth Circuit] precedent holds § 1985(3) does not apply to federal officers." *Cantú*, 933 F.3d at 419.

Additionally, Plaintiff's Section 1985(3) claim also "fail[s] for an independent reason." 933 F.3d at 419. The relevant text of Section 1985(3) criminalizes "only

conspiracies that involve depriving someone of 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Id.* (citing 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). "This kind of conspiracy requires some form of class-based discrimination." *Id.* ("Even assuming § 1985(3) covers Cantú's proffered class—convicted felons—Cantú's claims still can't survive a Rule 12(b)(6) motion.") (additional citations omitted*)*. Here, Plaintiff has failed to allege class-based discrimination. Accordingly, the Court need not complete the analysis.

Plaintiff's claim against Defendant under 42 U.S.C. § 1985(3), Count F, is dismissed.

### iii.    *Bivens* Claims—Count I

Third, Defendant moves to dismiss Count I, which is Plaintiff's claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 20-1, p. 1).

In *Bivens*, the Supreme Court recognized "an implied cause of action to sue federal officers for violating an arrestee's 'rights of privacy' by 'manacl[ing] petitioner in front of his wife and children,' 'threaten[ing] to arrest the entire family,' and strip searching him.*" Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112, 207 L. Ed. 2d 1052 (2020) (citing *Bivens*, 403 U.S. at 389–90). In the following decade, the Court allowed *Bivens*-type remedies only twice more, in a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979), and in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017).

These are the only cases in which the Court has approved an implied damages remedy under the Constitution itself. *Id.*

Before allowing Plaintiff to sue under *Bivens*, the Court must ask two questions. First, do Plaintiff's claims fall into one of the three existing *Bivens* actions? Second, if not, should the Court recognize a new *Bivens* action here? In the instant case, the answer to both questions is no. *See Cantú*, 933 F.3d at 422.

Turning to the first question of whether Plaintiff's claims fall into one of the three existing *Bivens* actions, the Supreme Court set forth the following test:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. The instant case presents a new context because it differs in a meaningful way from previous *Bivens* cases. *See id*.

Here, Plaintiff alleges that Defendant caused him to be "unlawfully detained from December 18, 2018 until January 17, 2019," and "falsely imprisoned with no lawful cause, thereby violating his constitutional rights as protected by the Fourth, Fifth and Sixth Amendments." (Doc. 19, ¶ 67–68).

Defendant argues that while *Bivens* itself involved a Fourth Amendment violation, the instant case involves different conduct and a different federal agency. (Doc. 20-1, p. 10–11). Regarding Plaintiff's Fifth Amendment claim, Defendant contends that "although *Davis* did allow a Fifth Amendment equal protection and due process claim, *Davis*—concerning employment discrimination by a congressman— involved none of the facts or types of federal officers at issue in this matter." (*Id.* at p. 10 (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Finally, Defendant argues that the Court has "never recognized a *Bivens* claim predicated on a violation of the Sixth Amendment." (*Id.*). The Court agrees. The Court notes its concern, however, that in effect, Plaintiff faces a closed courthouse door when this case involves a direct deprivation of liberty—arguably much more serious than employment discrimination.

The Supreme Court recently addressed the threshold question of whether a case presents a new *Bivens* context and rejected the "same right" reasoning. *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112, 207 L. Ed. 2d 1052 (2020). In short, a violation of the same clause of the same constitutional amendment in the same way "still doesn't cut it." *Id.* (citing *Chappell v. Wallace*, 462 U.S. 296 (1983) (noting that the "Supreme Court rejected a Fifth Amendment Due Process claim for unlawful termination (the claim at issue in *Davis*) because the plaintiff was a military servicemember rather than a congressional employee.")); *compare Carlson v. Green*, 446 U.S. 14, 17–18 (1980) (recognizing a *Bivens* claim against federal prison officials for failure to provide medical treatment), *with*

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (rejecting a *Bivens* claim against private prison officials for failure to provide medical treatment)). "Naturally, these principles apply in the Fourth Amendment context too." *Cantú*, 933 F.3d at 422 (citing *Alvarez v. ICE*, 818 F.3d 1194, 1199, 1206 (11th Cir. 2016) (treating plaintiff's *Bivens* claim for unreasonable seizure as a "new" one); *De La Paz v. Coy*, 786 F.3d 367, 375 (5th Cir. 2015) (same); cf. *Arevalo v. Woods*, 811 F.2d 487, 489–90 (9th Cir. 1987) (barring plaintiff's *Bivens* claim for unreasonable search and seizure)); *see also Ziglare v. Abbasi*, 137 S. Ct. 1843, 1859–60 (2017).

In the recent case of *Oliva v. Nivar*, the Fifth Circuit held that *Bivens* claims are limited to the circumstances of the Supreme Court's trilogy of cases—*Bivens*, *Davis*, and *Carlson*—and found that "[v]irtually everything else is a 'new context.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, No. 20-1060, 2021 WL 2044553 (U.S. May 24, 2021) (citing *Abbasi*, 137 S. Ct. at 1865).

Accordingly, the Court is constrained to find that Plaintiff's claims are meaningfully different from the Fourth Amendment claim in *Bivens* and the Fifth Amendment claim in *Davis*, and therefore, present a "new context."[1] *See Cantú*, 933 F.3d at 423. Here, Plaintiff's allegations involve different conduct by different officers from a different agency. *See id.* Plaintiff does not allege that the "officers entered his home without a warrant or violated his rights of privacy," nor does Plaintiff allege "a Fifth Amendment equal protection claim for employment discrimination by a congressman." *See id.* (citing *Bivens v. Six Unknown Named*

---

[1] The Court notes that the Supreme Court has never recognized a *Bivens* claim in the context of the Sixth Amendment.

*Agents of Fed. Bureau of Narcotics.*, 403 U.S. 389–90 (1971); *Davis v. Passman*, 442 U.S. 228 (1979)).

Because Plaintiff's claims present a "new context," the Court turns to the second question of whether the Court should recognize a new *Bivens* action here. The Fifth Circuit explained that the Supreme Court "has admonished us to exercise 'caution' in the 'disfavored judicial activity' of extending *Bivens* to any new set of facts." *Cantú*, 933 F.3d at 421–22 (citing *Abbasi*, 137 S. Ct. at 1857) (additional citations omitted). For decades, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020), *cert. denied*, No. 20-1060, 2021 WL 2044553 (U.S. May 24, 2021) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). And the Court recently reminded us, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020)).

In *Cantú*, the Fifth Circuit recognized two applicable "special factors" counseling against extending *Bivens* action: (1) the existence of a statutory scheme for torts committed by federal officers; and (2) the length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context. *Cantú*, 933 F.3d at 423–24. In the face of these considerations, "courts may not create [a cause of action], no matter how desirable that might be as a policy matter." *Id.* at 424 (internal citations omitted). Because this case presents a new context and because special factors counsel against extending *Bivens*, the Court cannot create a *Bivens*

cause of action here, no matter how troubling the conduct at issue and "no matter how desirable that might be as a policy matter." Accordingly, Plaintiff's *Bivens* claim, Count I, is dismissed against Defendant.

As noted, the Court is constrained to dismiss Plaintiff's *Bivens* claim based on inflexible precedent. However, the Court is concerned about the complete lack of federal actor accountability in this case and others like it. That a United States citizen has no redress after being deprived of liberty without lawful basis for thirty days, and a federal agent remains unaccountable because of his status as a federal officer, reveals the absurdity of the legal doctrines the higher courts have fashioned. Such a result could not have been intended by the framers of our Constitution. As Chief Justice John Jay wrote in 1794, "Justice is indiscriminately due to all, without regard to numbers, wealth, or rank." *State of Georgia v. Brailsford*, 3 U.S. 1, 4, 1 L. Ed. 483 (1794). Today, government agents are often unaccountable, even if their conduct violates the Constitution or other laws, because of the way Courts and Congress have addressed, or in some instances, failed to address, these unsettling situations.

Three recent cases illuminate the problem: *Hernandez v. Mesa*, *Oliva v. Nivar*, and *Byrd v. Lamb*.

In *Hernandez v. Mesa*, the Supreme Court held that *Bivens* does not extend to Fourth and Fifth Amendment claims made by a 15-year-old Mexican national's family after he was shot in the face and killed by a U.S. Border Patrol Agent. 140 S. Ct. 735, 737 (2020). Dissenting, Justice Ginsburg opined that "Even accepting,

*arguendo*, that the setting in this case could be characterized as 'new,' there is still no good reason why Hernández's parents should face a closed courtroom door. As in *Bivens*, plaintiffs lack recourse to alternative remedies." *Id.* at 757 (Ginsburg, R., dissenting).

In *Oliva v. Nivar*, the Fifth Circuit held that a 70-year-old Vietnam War veteran had no constitutional remedy after he was "choked and assaulted by federal police in an unprovoked attack at a VA hospital."[2] *Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, D., concurring) (citing *Oliva v. Nivar*, 973 F.3d 438, 441 (5th Cir. 2020), *cert. denied*, No. 20 1060, 2021 WL 2044553 (U.S. May 24, 2021)).

In *Byrd v. Lamb*, the Fifth Circuit refused to extend *Bivens* and instructed the district court to dismiss all claims against a federal agent after the agent allegedly physically and verbally threatened Byrd with a gun to facilitate an unlawful seizure.[3] No. 20-20217, 2021 WL 871199, at *1 (5th Cir. Mar. 9, 2021).

---

[2] On February 16, 2016, Jose Oliva attempted to enter a Veterans Affairs ("VA") hospital in El Paso, Texas. *Oliva v. Nivar*, 973 F.3d 438, 440 (5th Cir. 2020), *cert. denied*, No. 20-1060, 2021 WL 2044553 (U.S. May 24, 2021). The entrance to the hospital was protected by VA police and metal detectors. (*Id.*). While Oliva stood in line for the metal detector, he spoke with one of the officers. Somehow the conversation escalated into a physical altercation which ended when VA police wrestled Oliva to the ground in a chokehold and arrested him. *Id.* The violent nature of the arrest required Oliva to undergo two shoulder surgeries and treatment for post-traumatic stress disorder due to nightmares and anxiety stemming from the event. *Id.* at 440–41.

[3] The agent allegedly verbally threatened to "put a bullet through [Byrd's] f—king skull" and stated that "he would blow [Byrd's] head off." *Byrd v. Lamb*, No. 20-20217, 2021 WL 871199, at *1 (5th Cir. Mar. 9, 2021). The agent allegedly attempted to smash the window of Byrd's car and left marks and scratches on the car window. *Id.* Shortly after the incident began, Byrd called for police assistance. *Id.* Upon the officers' arrival, the agent identified himself as a federal agent and one of the officers immediately handcuffed and detained Byrd for nearly four hours. *Id.* After reviewing the surveillance footage, the officers released Byrd and took the agent into custody for aggravated assault with a deadly weapon and misdemeanor criminal mischief. *Id.*

In the instant case, Plaintiff was allegedly detained without lawful cause for 30 days.

These cases all share a common theme: the absence of accountability. Notably, this case, and others like it, are typically dismissed during the preliminary phase of litigation before the opportunity to gather more evidence ever arises.[4]

In *Byrd*, Judge Willett concurred and declared, "[T]oday's result is precedentially inescapable: Private citizens who are brutalized—even killed—by rogue federal officers can find little solace in *Bivens*." 2021 WL 871199, at *3 (Willett, D., concurring). The Court agrees with Judge Willet's concerns:

> My big-picture concern as a federal judge—indeed, as an everyday citizen—is this: If *Bivens* is off the table, whether formally or functionally, and if the Westfall Act preempts all previously available state-law constitutional tort claims against federal officers acting within the scope of their employment, do victims of unconstitutional conduct have any judicial forum whatsoever? Are all courthouse doors—both state and federal—slammed shut? If so, and leaving aside the serious constitutional concerns that would raise, does such wholesale immunity induce impunity, giving the federal government a pass to commit one-off constitutional violations?

> Chief Justice John Marshall warned in 1803 that when the law no longer furnishes a "remedy for the violation of a vested legal right," the United States "cease[s] to deserve th[e] high appellation" of being called "a government of laws, and not of men." Fast forward two centuries, and redress for a federal officer's unconstitutional acts is either extremely limited or wholly nonexistent, ***allowing federal officials to operate in something resembling a Constitution-free zone.*** *Bivens* today is essentially a relic, technically on the books but practically a dead letter, meaning this: If you wear a federal badge, you can inflict excessive force on someone with little fear of liability.

---

[4] Each Ruling cited here was resolved at the Motion to Dismiss phase, which is typically litigated prior to the discovery process and the opportunity to uncover key information regarding the underlying events in the case.

*Id.* at \*4 (Willett, D., concurring) (emphasis added).

Finally, "[a] written constitution is mere meringue when rights can be violated with nonchalance. I add my voice to those lamenting today's rights-without-remedies regime, hoping (against hope) that as the chorus grows louder, change comes sooner." *Id.* at \*5 (Willett, D., concurring). The Court joins the chorus.

## B. Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss—Counts J through L

Finally, Defendant moves to dismiss Counts J through L, including state law claims for false imprisonment, intentional infliction of emotional distress, and respondeat superior, pursuant to Rule 12(b)(1). (Doc. 20-1, p. 1). Defendant asserts that Counts J through L are barred by sovereign immunity. (*Id.* at p. 2). Defendant argues that the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, provides the exclusive remedy for asserting tort claims against the United States, and Plaintiff has failed to assert his claims pursuant to the FTCA. (*Id.*). Additionally, Defendant contends that Plaintiff has not alleged, nor can he show, that he has exhausted his administrative remedies as the FTCA requires. (*Id.*). Therefore, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's state law claims against him, requiring dismissal without prejudice. (*Id.*).

Plaintiff responds that Counts J through L should not be dismissed as to Defendant because these counts are also relevant to Plaintiff's claims under *Bivens*. (*Id.* at p. 9). Because the Court has dismissed Plaintiff's *Bivens* claims against Defendant, the Court disagrees.

The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state law tort suits against the Federal Government. *Brownback v. King*, 141 S. Ct. 740, 745 (2021) (citing 28 U.S.C. § 2674; *see also* § 1346(b)). "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." *Brownback*, 141 S. Ct. at 746 (citing *FDIC v. Meyer*, 510 U.S. 471, 475–476 (1994)). A "suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of [federal] government agencies or employees." *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (citing 28 U.S.C. § 2679(a) (1982)).

Plaintiff does not bring his tort claims pursuant to the FTCA, the exclusive remedy for tort claims arising from the actions of federal employees. *See id.* Accordingly, Plaintiff's state law claims against Defendant will be dismissed.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Jacob Dettmering's **Rule 12(b)(1), (6) Motion To Dismiss (Doc. 20)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and *Bivens* against Defendant Jacob Dettmering are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's state law tort claims against

Defendant Jacob Dettmering are **DISMISSED WITHOUT PREJUDICE**.

Baton Rouge, Louisiana, this 29th day of July, 2021

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**